

**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-177-03130

*Law and Policy Section*            *Telephone (202) 514-1442*
*P.O. Box 4390*            *Facsimile (202) 514-4231*
*Ben Franklin Station*
*Washington, DC 20044-4390*

October 26, 2011

Clerk's Office
U.S. District Court
Northern District of California, San Francisco
450 Golden Gate Ave., 16th Fl.
San Francisco, CA 94102

       Re:    Baykeeper v. Hanson Aggregates Mid-pacific, Inc. et al, United States District Court for the Northern District of California (San Francisco), Case. No. 3:11cv1722

Dear Clerk of Court:

       I am writing to notify you that the United States has reviewed the proposed consent decree in this action and does not object to its entry by this Court.

       On September 12, 2011, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to Clean Water Act, 33 U.S.C. § 1365(c)(3). This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

See also 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice). A settlement that does not undergo this federal review process is at risk of being void.

       In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

In this case, the Plaintiff alleged violations of section 301(a) and 402 of the Clean Water Act, 33 U.S.C. § 1311 and § 1342, for the unlawful discharge of pollutants and violations of storm water permit requirements. In terms of injunctive relief, the proposed consent decree requires the Defendant to implement stormwater-related facility compliance measures including designating discharge points, process areas, and storage areas; creating complete stormwater flow site maps; designing protocol for all sampling locations; install silt fencing; implementing specified Best Management Practices Plan to comply with the Industrial Stormwater Permit, and amending their current Storm Water Pollution Prevention Plan. The consent decree also provides for employee training, specified stormwater and sand washing process wastewater sampling schedules and reporting, and drafting of an action plan for the facilities in question subject to Plaintiff review.

This consent decree further provides that the Golden Gate Audubon receive a total payment of $25,000 for a SEP to restore wetlands in the areas adjacent to the Pier 92 and Pier 94 Facilities, and that the Rose Foundation receive a total payment of $10,000 for a SEP to benefit the environment of the San Francisco Bay watershed. The consent decree also provides that, in the event of future missed deadlines and failure to collect required samples by the Defendant, the Defendant shall pay additional stipulated amounts to the Rose Foundation.

Where a consent judgment provides for the payment of sums to a third party for a SEP, the United States asks the third party to confirm in writing that it is a section 501(c)(3) tax-exempt entity and that it (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.

On October 24, 2011 and September 16, 2011, the United States received from Golden Gate Audubon and Rose Foundation, respectively, letters confirming that all funds received from the Defendant as a result of the proposed consent decree would be used solely for the purpose outlined in the decree and that they do not fund political lobbying activities prohibited by section 501(c)(3) of the IRS Code; copies of those letters are attached as Exhibits A and B. The Department of Justice believes that these letters will help ensure that any monies expended under the proposed consent judgment will be used in a manner that furthers the purposes of the Act, and that is consistent with the law and the public interest.

Given these representations, the United States has no objection to the entry of the proposed second amended consent judgment. We accordingly notify the Court of that fact.

The United States affirms for the record that it is not bound by this settlement. See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc., 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); Sierra Club v. Electronic Controls Design, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United

States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. See 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court. Please contact the undersigned at (202) 514-3932 if you have any questions.

Sincerely,

/s/ Judy B. Harvey
Judy B. Harvey, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 4390
Washington, D.C. 20044-4390

cc:     Counsel on Record via ECF

# ATTACHMENT A



*inspiring people to protect
Bay Area birds since 1917*

October 24, 2011


<u>Via U.S. Mail and Email</u>
Sarah Lu
P.O. Box 4390
Ben Franklin Station
Washington, D.C. 20044-4390
sarah.lu@usdoj.gov

      Re:    SEP Funds from *Baykeeper v. Hanson Aggregates* for the Pier 94 Wetland Restoration Project

Dear Ms. Lu:

      On behalf of the Golden Gate Audubon Society, I am providing this letter to the U.S. Department of Justice, the U.S. federal court, and the parties in the above-referenced matter to (1) assure them that Golden Gate Audubon understands and can execute its obligations related to the receipt of funds related to the settlement and (2) to briefly describe the project and how funds will be expended.

      Founded in 1917, Golden Gate Audubon is one of the oldest wildlife conservation organizations on the West Coast. Golden Gate Audubon is dedicated to protecting Bay Area birds, other wildlife, and their natural habitats. We conserve and restore wildlife habitat, connect people of all ages and backgrounds with the natural world, and educate and engage Bay Area residents in the protection of our shared, local environment. Our conservation accomplishments to date include the protection and restoration of many important wildlife habitats around San Francisco Bay. Golden Gate Audubon is a 501(c)(3) non-profit organization governed by a volunteer Board of Directors and staffed by professionals focused on conservation biology and advocacy, volunteer mobilization, habitat restoration, and environmental education. Many of Golden Gate Audubon's activities are carried by over 1,500 community volunteers and nearly 10,000 members and supporters throughout the Bay Area.

      I am authorized to assure the Department of Justice, the parties in the above-referenced matter, and the Court of the following:

      1.    On behalf of Golden Gate Audubon, the Settlement Agreement in *Baykeeper v. Hanson Aggregates LLC* has been reviewed by Michael

GOLDEN GATE AUDUBON SOCIETY
2530 San Pablo Avenue, Suite G   Berkeley, California 94702
phone 510.843.2222   fax 510.843.5351   web www.goldengateaudubon.org

                Lynes, our Conservation Director and General Counsel for Environmental Matters, and me and we understand its requirements;

2.     Golden Gate Audubon is able to accept and account for the $25,000 for wetland restoration at Pier 94 as described in Paragraph 49 of the Settlement Agreement;

3.     Golden Gate Audubon will only expend the $25,000 in accord with the terms of the Settlement Agreement, specifically for the continuation of wetland restoration activities at Pier 94;

4.     Golden Gate Audubon will not use any portion of the money provided for political lobbying activities or litigation; and

5.     Golden Gate Audubon will provide the parties, the DOJ, and the Court with a letter explaining how the funds were spent once they are expended or earlier, upon request.

    The funds provided by the Settlement Agreement will be used to continue Golden Gate Audubon's wetland restoration work at Pier 94 in San Francisco, California. Located along the city's heavily industrialized southern waterfront, Pier 94 is a small refuge for wildlife and native plants in a heavily industrialized area. After the site was used as an illegal dump for decades, Pier 94 was restored to a natural wetland by Golden Gate Audubon and the Port of San Francisco starting in 2002. Since that time, two high-functioning wetlands have been created, hosting breeding, migrating, and over-wintering native shorebirds, waterfowl and gulls while the uplands support songbirds and native insects. The site hosts the first self-propagating and largest stand of the endangered plant California sea-blite (*Sueda californica*) as well as many other species of native plants. The site also provides residents of the neighboring Bayview-Hunter's Point community with access too a wild outdoor area to see and experience native wildlife and plants. Golden Gate Audubon continues to work at the site through an active restoration program, monthly volunteer work parties, special events for schools and community groups, and its award-winning Eco-Education program targeted at elementary school children in the adjacent Bayview community.

    Specifically, funds from the Settlement Agreement will contribute to existing support for our ongoing work at the site, which includes:

1.     Monitoring of the wetland health to ensure proper functioning, including water-sampling and analysis and assessment of microbiological and plant communities in the wetlands (to maximize oxygen production, reduce occurrence of invasive non-native plants, etc.), allowing for adaptive management at the site;

2.     Removal of invasive, non-native plants (such as invasive spartina) from the wetland and wetland transition zones;

Re: *Baykeeper v. Hanson Aggregates, LLC*
October 24, 2011
Page 3 of 3

3. Planting of native plants in the wetlands and wetland transition zone, including the purchase of plants, tools, and other materials needed to successfully propagate native plants at the site;

4. Removal of trash and other artificial debris from the wetland, shoreline, and wetland transition zone;

5. Organization and execution of volunteer work days at Pier 94, including outreach to community stewards;

6. Purchase of tools and other materials necessary to execute the volunteer work days and wetland restoration; and

7. A portion of staff time and overhead to continue the Pier 94 wetland restoration project.

I hope that this letter has provided you with all the information necessary to approve of the Settlement Agreement and to assure all stakeholders that Golden Gate Audubon will responsibly steward and expend the funds identified in the settlement. If you have any further inquiries, please do not hesitate to contact me at (510) 843-2222 or mwelther@goldengateaudubon.org.

Sincerely,

*Mark Welther*

Mark Welther
Executive Director

# ATTACHMENT B

Harvey, Judy

# THE ROSE FOUNDATION

For Communities & The Environment

9/13/11

Ms. Sarah Lu
US Department of Justice
Environment & Natural Resources Division
Policy, Legislative & Special Litigation Section
P.O. Box 4390
Ben Franklin Station
Washington, D.C. 20044-4390

Re: <u>San Francisco Baykeeper v. Hanson Aggregates</u>

Dear Ms. Lu,

This letter is intended to provide assurance that I have received the proposed Consent Decree between the San Francisco Baykeeper and Hanson Aggregates, and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Hanson Aggregates as specified in the Consent Decree. These funds may include both mitigation funding and stipulated payments.

2) As specified in the Consent Decree, the Rose Foundation shall only use these monies to fund projects designed to benefit the environment and water quality of the San Francisco Bay watershed. None of these funds shall be disbursed to San Francisco Baykeeper.

3) After all of these funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the court and the parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not fund political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

---

6008 College Avenue, Suite 10 • Oakland, California 94618
(510) 658-0702 • fax: (510) 658-0732
email: rose@rosefdn.org • www.rosefdn.org

Corr
90-1-24-177-03130

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

- Harness economic power to leverage environmental sustainability, support job creation through the development of environmentally sound businesses, and encourage communication and cooperation between businesses and their communities.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water and individual dignity.

   The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

   I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little<br>
Executive Director